Case: 3:06-cv-00719-jcs Document #: 102 Filed: 06/21/07 Page 1 of 18

Document Number  Case Number
1021             06-C-0719-S
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
06/21/2007 07:37:35 AM CDT

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

DENNIS HECKER, JONNA DUANE and
JANICE RIGGINS, individually and on
behalf of those similarly situated,

    Plaintiffs,

  v.

DEERE & COMPANY, FIDELITY MANAGEMENT
TRUST COMPANY, and FIDELITY MANAGEMENT
AND RESEARCH COMPANY,

    Defendants.

MEMORANDUM AND ORDER
06-C-719-S

---

Plaintiffs Dennis Hecker, Jonna Duane and Janice Riggins commenced this class action alleging that defendant's Deere & Company, Fidelity Management Trust Company (Fidelity Trust), and Fidelity Management and Research Company (Fidelity Research) breached their fiduciary duties under the Employee Retirement and Income Security Act (ERISA) in the payment and non-disclosure of certain fees paid for the management of employee retirement funds. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. The matter is presently before the Court on defendants' motions to dismiss plaintiffs' second amended complaint. The following is a summary of relevant facts as alleged or referenced in the second amended complaint.

FACTS

Defendant Deere, a heavy equipment manufacturer, sponsors personal savings plans (401(k) plans) for its employees. Defendant is also the administrator of the 401(k) plans. Pursuant to the 401(k) plans employees may contribute part of their pre-tax earnings to the plan and defendant Deere will match the contributions up to a certain percentage. The funds are invested in various investment options presented by the plan and chosen by the employee. More than $2.5 billion is invested by employees in the Deere 401(k) plans. Plaintiffs are participants in the 401(k) plans.

In 1990 defendants Deere and Fidelity Trust entered into an agreement in which Fidelity Trust agreed to act a trustee for the 401(k) plans, to perform record keeping and other administrative tasks for the plans. As plan administrator Deere has final authority to select investment options for the plans. Deere's role in selecting funds is described in the relevant Summary Plan Descriptions (SPDs) as follows:

> **Who are the plan administrators and what functions do they perform?**
>
> The authority to control and manage the operation and manage the operation and administration of the Plan is vested in [Deere].... As administrator of the Plan, [Deere] has, among other powers, the right to ... (vi) maintain records concerning the Plan and make arrangements with the trustee to maintain accounts and proper statements.

> All contributions to the Plan are held by the trustee, [Fidelity Trust], acting under a trust agreement dated December 1, 1990. The Trustee's primary responsibilities are to: (i) hold and invest the Plan assets in trust among several investment options selected by [Deere] and as directed by Plan participants and (ii) perform certain ministerial recordkeeping functions.
>
> . . .
>
> **What fees and charges may participants in the Plan be subject to?**
>
> The costs of administering the Plan are paid by the Company. Participants incur no transaction fees or sales loads on funds purchased and sold through the Plan's standard plan options.... All fund investors indirectly pay any fund-level expenses, such as management fees, asset-based sales charges (12b-1 fees), and other fund expenses, as detailed in the fund's prospectus....

Deere agreed with Fidelity Trust that Deere would limit its selection of investment options to investment funds offered by defendant Fidelity Research for which Fidelity Research was investment advisor ("Fidelity Funds"). Fidelity Funds are marketed to investors throughout the United States through various commercial outlets. Presently, 23 of the 26 investment options available to the 401(k) plan participants are Fidelity Funds. Fidelity Trust and Fidelity Research are both subsidiaries of Fidelity Investments.

Defendant Fidelity Trust is compensated in part for its duties as trustee by direct payment from defendant Deere. Government

filings made on behalf of the plans represent that the Plans themselves make no direct payment to defendant Fidelity Trust.

Each of the funds for which defendant Fidelity Research is investment advisor charge fund investors an asset-based fee. The fee, expressed as a percentage of total dollars invested in a particular fund, varies from fund to fund. Of the 20 primary options offered, fees range from .07% for the Spartan Fund (which replicates the S&P 500) to 1.01% for the Diversified International Fund. The total fee, expressed as a percentage of assets invested, is set forth in each fund prospectus, further itemized between management fee, service fee and other expenses. Additionally, the plans offer an investment alternative called BrokerageLink which permit participants to invest in over 2500 different publicly available mutual funds from Fidelity and broker mutual fund companies.

As the total amount of money invested in the funds grows, the fees grow. Fidelity Research shares some of the fee revenue it receives with Fidelity Management. The fact and the amount of this revenue sharing of asset-based revenue is not known to defendant Deere or disclosed to plan participants. The Fidelity Funds available in the plan are the same funds, and charge the same asset-based fees, as those made available to large and small investors in the retail market for investment funds. Defendant Deere could have negotiated lower fees with Fidelity Research, or

could have selected different funds from different providers with lower rates but has made no effort to do so.

MEMORANDUM

The second amended complaint, distilled to the actual causes of action, alleges that the defendants violated their fiduciary duties to plan participants in two ways: by providing investment options with excessive and unreasonable fees and costs, and by failing to adequately disclose information about the fees and costs to plan participants. Defendant Deere moves to dismiss the complaint on the basis that its disclosures were fully compliant with ERISA requirements and that any claim based on the amount of the total fees is foreclosed by ERISA's safe harbor provision, 29 U.S.C. § 1104(c). Defendant Fidelity Trust moves to dismiss the claims against it on the basis that the claims do not relate to its limited fiduciary role and defendant Fidelity Research contends that it is not a fiduciary.

A complaint should be dismissed for failure to state a claim only if it appears beyond a reasonable doubt that the plaintiffs can prove no set of facts in support of the claim which would entitle the plaintiffs to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In order to survive a challenge under Rule 12(b)(6) a complaint "must contain either direct or inferential allegations

respecting all the material elements necessary to sustain recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F. 2d 1101, 1106 (7th Cir. 1984).

Initially, plaintiffs oppose the motions to dismiss on the grounds that they are based in part on Summary Plan Descriptions (SPDs) and prospectuses which are not attached to the complaint and therefore not properly considered on a motion to dismiss. Documents not attached to the complaint may be considered if they are referred to in the compliant, are concededly authentic and are central to the plaintiff's claim. Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002). The point of the exception is to limit a plaintiff's ability to evade dismissal by failing to attach an important document that proves plaintiff's claims lack merit. Id. Both the exception and its purpose are applicable here. The complaint is based on the terms of the plans and the alleged inadequacy of disclosures to participants. Accordingly, the plan documents, the SPDs, and the prospectuses which are referenced in the SPDs are central to the claim and form the basis for the complaint. The prospectuses, in addition to being fundamental to the complaint are widely circulated publicly available documents. There is no dispute concerning the authenticity of any of them.

Although many of the allegations are derived from the documents, they have not been attached to the complaint in an apparent effort to evade assessment of the legal merits of the

6

claims on a motion to dismiss. Far from a short and plain statement of claims as contemplated by Rule 8, the complaint is a rambling 38 page collection long on legal argument, public policy rhetoric and repetition, but vague in its allegations of facts which might be relevant to the claims alleged. Under the circumstances it is appropriate to consider them as part of the complaint on a motion to dismiss.

Adequacy of Disclosure

Defendant Deere moves to dismiss the claims contending that the allegations and plan documents establish as a matter of law that it has fully complied with the applicable ERISA disclosure provisions. Plaintiffs dispute compliance and further argue that additional disclosure is required based on Deere's general fiduciary obligations.

The following provisions of title 29 of the United States Code are relevant:

> **§ 1021(a) Summary plan description and information to be furnished to participants and beneficiaries**
> The administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b) of this title to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan —
> (1) a summary plan description described in section 1022(a)(1) of this title; and
> (2) The information described in sections 1024(b)(3) and 1025(a) and (c) of this title.
>
> . . .

> **§ 1023(b) Financial statement**
>
> An annual report under this section shall include a financial statement containing the following information
>
> . . .
>
> (2) With respect to an employee pension benefit plan: a statement of assets and liabilities, and a statement of changes in net assets available for plan benefits which shall include details of revenues and expenses and other changes aggregated by general source and application.
>
> . . .
>
> **§ 1024(b) Publication of Summary Plan Description and annual report to participants and beneficiaries of plan**
>
> Publication of the summary plan description and annual reports shall be made to participants and beneficiaries of the particular plan... [w]ithin 210 days afer the close of the fiscal year of the plan, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules described in [§ 1023(b)]....

29 C.F.R. § 2520.104b (c)(3) prescribes the form of the annual report relevant to expenses as follows:

> Plan expenses were ($        ).  These expenses included ($      ) in administrative expenses and ($          ) in benefits paid to participants and beneficiaries, and ($       ) in other expenses.

The second amended complaint alleges that defendants failed to disclose the fact that Fidelity Research shared part of the fees it received with its corporate sibling, Fidelity Trust. Nothing in the statute or regulation directly requires such a disclosure. Plaintiffs contend that failure to disclose the transfer renders the existing disclosures inaccurate because a portion of the

expenses reported as incurred for fund management was actually used for trustee administrative expenses. The statute and regulations cannot be reasonably read to require this type of disclosure for several reasons, particularly under the circumstances here.

The disclosure in the reports and prospectuses accurately reflect the expenses actually paid to the fund manager for fund management as evidenced by the allegations that the same fees are charged to all retail fund customers. To the extent that the charge includes profit, it is unlikely that the fund sponsor would know or be in a position to control its redistribution among related corporations, a fact conceded in defendants' brief. There is no evidence of intent in the statute or regulations to reach this type of detail. Moreover, recent proposals to amend the regulations, see 71 Fed. Reg. 41,392, 41,394, to require revenue sharing disclosures in annual reports make it apparent that present regulations do not require it. These proposals for regulatory change originated in the ERISA Advisory Counsel <u>Report of the Working Group on Plan Fees and Reporting on Form 5500</u>, http://www.dol.gov/ebsa/publications/AC_111804_report .html, a document relied upon by both parties.

The report examines the nature of the revenue sharing and its effect on the adequacy of expense disclosure for 401(k) plans as presently required by ERISA regulations:

> Currently the Form 5500 fee reporting requirements do not
> meet the Department of Labor's objectives with regard to

>the data collected. There are numerous pooled investment vehicles in which the fees are intrinsic to the underlying investment and are not reported to (or known by) the plan sponsor nor reported on Form 5500. Additionally, fees paid to plan service providers such as record keepers and trustees out of these asset-based fees, in the form of revenue sharing, sub-transfer agency fees, 12(b)(1) fees or the like are not reported on Form 5500 or the accompanying Schedules. While some more sophisticated plan sponsors are cognizant of the overall fees, both explicit and embedded, as well as the revenue sharing arrangements between various providers, many plan sponsors simply do not understand the total fees paid to service providers, nor the revenue streams between them. The fiduciary responsibility provisions of ERISA require that plan sponsors know the amount of fees paid in relationship to the services provided and to understand the revenue sharing arrangements between plan providers. Therefore, the Department of Labor should consider amending the Form 5500 and the accompanying Schedules and, through its rule-making authority, solicit the input from the industry as to the appropriate methodology for capturing that information. In particular, the Department of Labor may wish to consider use of a proxy in order to estimate total fees in light of the significant difficulties of capturing exact information at the plan level. The Department of Labor may also wish to modify its existing worksheet for plan sponsors in order to provide a tool to help plan sponsors understand the true nature of the non-explicit fees and revenue sharing arrangements among the plan's providers prior to choosing the provider or an investment option.

Executive Summary at pp. 3-4.

A review of the report confirms that the revenue sharing issue raised by plaintiffs' complaint is a matter of policy concern within the Department of Labor.  It also unequivocally confirms that present regulations do not require disclosure of the information.  <u>See</u> particularly the report's Recommendations for Regulatory Change at p. 8.  Whether, as a policy matter, additional reporting of revenue sharing arrangements should be required, it is

not presently required and failure to include such information does not violate existing ERISA standards for disclosure. Accordingly, defendants' failure to so disclose is not a violation of the present statute of regulations and does not state a claim for breach of the duty of disclosure.

There is no merit to plaintiffs' contention that disclosure not required by the statutory disclosure requirements is separately required by the general ERISA fiduciary obligations. Disclosure requirements are generally limited to those expressly prescribed by the statutory language of ERISA. Ames v. American Nat. Can Co., 170 F.3d 751, 759 (7th Cir. 1999). Even the case relied upon by plaintiffs, Jordan v. Federal Express Corp., 116 F.3d 1005 (3d Cir. 1997), confirms that while Courts have latitude to develop the meaning of general fiduciary duties, that latitude is limited as applied to disclosure obligations. "Because the statutory disclosure and reporting requirements and remedies were carefully considered and described by Congress, we required a showing of 'extraordinary circumstances' for a participant to receive an equitable remedy under § 502(a)(3)." Id. at 1013. Where as here Congress has by statute and related regulation, created detailed rules governing disclosure requirements, it would be inappropriate to ignore and augment them using the general power to define fiduciary obligations.

The second amended complaint does not state a claim based on the failure to comply with ERISA's disclosure requirements.

Failure to Provide Lower Fee Investment Choices

The second amended complaint also alleges that defendants breached their fiduciary obligations by selecting and offering investment options with unreasonably high fees for the 401(k) plans. ERISA requires that a fiduciary must discharge its duties with the care, skill, prudence and diligence of a prudent man. 29 U.S.C. § 1104(a)(1)(B). It also provides a "safe harbor" from liability for breaches of fiduciary duties under limited circumstances in 29 U.S.C. § 1104(c):

> (1) In the case of a pension plan which provides for individual accounts and permits a participant of beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary) – ...
>
> (B) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.

Defendants move to dismiss the claim on the basis that the safe harbor applies. Initially, plaintiffs oppose the motion on the basis that consideration of the defense is inappropriate on a motion to dismiss. Alternatively, plaintiffs contend that the safe harbor is unavailable because defendants have not complied with the regulatory disclosure requirements and, more fundamentally, because plaintiffs alleged losses do not stem from any exercise of control by them.

Although plaintiffs did so in the second amended complaint, they were under no obligation to allege facts which would overcome an anticipated affirmative defense. <u>U.S. Gypsum Co. v. Indiana Gas Co., Inc.</u> 350 F.3d 623, 626 (7th Cir. 2003).  However, a motion to dismiss may be based on a defense provided that the allegations of the complaint (and as discussed above, documents deemed to be part of the complaint) establish all the ingredients of the defense. <u>Id.</u>  Accordingly, defendants may prevail on the motion to dismiss based on the 29 U.S.C. § 1404(c) safe harbor, but only if the facts of the complaint establish all the elements of the defense.

In order to qualify for safe harbor treatment defendants must have complied with the requirements of 29 C.F.R. § 2550.404c-1. There is no dispute that the facts alleged establish all criteria except for the following provisions relating to expense disclosure:

> (v) A description of any transaction fees and expenses which affect the participant's or beneficiary's account balance in connection with purchases or sales of interests in investment alternatives (e.g., commissions, sales load, deferred sales charges, redemption or exchange fees);
>
> . . .
>
> (i) A description of the annual operating expenses of each designated investment alternative (e.g., investment management fees, administrative fees, transaction costs) which reduce the rate of return to participants and beneficiaries, and the aggregate amount of such expenses expressed as a percentage of average net assets of the designated investment alternative;

29 C.F.R. § 2550.404c-1(b)(2)(B)(1)(v), (2)(i).

13

On their face it appears that the disclosures provide precisely this information. Plaintiffs argue that the disclosures of the SPDs and prospectuses do not satisfy the requirements because they do not include such information as whether revenue sharing has occurred and do not include sufficiently detailed breakdown of other expenses not specifically required by the regulations. Plaintiffs suggest that the failure to provide this information prevents informed investment comparison. This argument suffers from the same flaw as the argument that revenue sharing information was required by ERISA disclosure provisions: The allegedly omitted disclosures are not required by the language of the regulations and would instead require judicial expansion of the detailed disclosure regime crafted by Congress and the Department of Labor pursuant to its statutory authority.

Furthermore, there is nothing to suggest that receiving this additional non-prescribed information would effectively enhance investment decisions. In assessing the likely return on an investment the fees netted against the return are certainly relevant, but knowing the subsequent distribution of those fees has no impact on the investment's value. See In re Merrill Lynch Investment Management Funds Securities Litigation, 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006)(holding that such information is not material under securities law). In the context of the disclosure of information on investment options the additional information

14

suggested by plaintiffs including revenue sharing is neither required by the regulations nor material to participant investors assessing the investment opportunity.

Even had defendants complied with the regulatory prerequisites for safe harbor status, defendants avoid liability for a breach of fiduciary duty only if plaintiff's loss, here the payment of excessive fees, resulted from the participants' exercise of control over the investments. Stated differently, the safe harbor acts as a defense only if participants could have avoided the losses by making investment choices available to them. <u>Langbecker v. Electronic Data Systems Corp.</u>, 476 F.3d 299, 312 (5th Cir. 2007).

> A plan fiduciary may have violated the duties of selection and monitoring of a plan investment, but § 404(c) recognizes that participants are not hapless victims of every error. Participants have access to information about the Plan's investments, pursuant to DOL regulations, and they are furnished with risk-diversified investment options.

<u>Id.</u>

Plaintiffs allege that defendants breached their fiduciary duties in this case by failing to properly evaluate the expense ratios applicable to the plan investment options and provide less expensive options so participants paid greater expenses than necessary, resulting in investment losses. When participants made their investment decisions they had access to the expense ratio for each investment fund and could take those expenses into

15

consideration.  Plaintiffs maintain that this exercise of control was illusory, because every investment option was burdened with excessive expenses and therefore participants were powerless to avoid them.  However, the only inference available given the factual allegations is that participants were in a position to exercise control over expenses.

Participants could choose to invest in twenty primary mutual funds and more than 2500 others through BrokerageLink.  All of these funds were also offered to investors in the general public so expense ratios were necessarily set to attract investors in the marketplace.  The expense ratios among the twenty primary funds ranges from just over 1% to as low as .07%.  Unquestionably, participants were in a position to consider and adjust their investment strategy based in part on the relative cost of investing in these funds.  It is untenable to suggest that all of the more than 2500 publicly available investment options had excessive expense ratios.  The only possible conclusion is that to the extent participants incurred excessive expenses, those losses were the result of participants exercising control over their investments within the meaning of the safe harbor provision.

Assuming for purposes of the present motion that defendants failed to satisfy their fiduciary obligation to consider expenses when selecting mutual fund investment options, they are nevertheless insulated from liability by the safe harbor provision

because of the nature and breadth of funds made available to participants under the plans.

Fidelity Defendants

It follows from the conclusion that no claim has been alleged for breach of fiduciary duty either for failure to disclose information about the plan or for selecting investment alternatives, that no liability can exist against the Fidelity defendants. It should also be noted that were disclosures non-compliant or the safe harbor rule inapplicable, neither of the Fidelity defendants could be liable because neither had fiduciary responsibility for making plan disclosures or selecting plan investments.

The trust agreements governing the obligations of the parties, as reflected directly in the allegations of the second amended complaint, unequivocally provide that defendant Deere has sole responsibility for selection of plan investment options. ERISA provides that a person is a fiduciary only to the extent that it has authority or exercises discretionary control over an aspect of the plan. 29 U.S.C. § 1002((21)(A); Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 471-72 (7th Cir. 2007). Had the Fidelity defendants been fiduciaries for some purposes, they were not fiduciaries for the purposes of making

17

plan investment decisions and accordingly could not be liable for breach of fiduciary duty on the claims.

## ORDER

IT IS ORDERED that defendants' motion to dismiss is GRANTED.

IT IS FURTHER ORDERED that judgment be entered dismissing plaintiffs' complaint with prejudice and costs.

Entered this 20th day of June, 2007.

BY THE COURT:

/s/
_____
JOHN C. SHABAZ
District Judge