Document Number Case Number
06-C-0719-S
United States District Court
Western District of Wisconsin
Theresa M. Owens

Filed/Received
10/22/2007 08:44:10 AM CDT

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

DENNIS HECKER, JONNA DUANE and
JANICE RIGGINS, individually and on
behalf of those similarly situated,

    Plaintiffs,

  v.            MEMORANDUM AND ORDER
              06-C-719-S

DEERE & COMPANY, FIDELITY MANAGEMENT
TRUST COMPANY, and FIDELITY MANAGEMENT
AND RESEARCH COMPANY,

    Defendants.

---

Plaintiffs Dennis Hecker, Jonna Duane and Janice Riggins commenced this class action alleging that defendant's Deere & Company, Fidelity Management Trust Company (Fidelity Trust), and Fidelity Management and Research Company (Fidelity Research) breached their fiduciary duties under the Employee Retirement and Income Security Act (ERISA) in the payment and non-disclosure of certain fees for the management of employee retirement funds.  On June 20, 2007 the Court dismissed the action with prejudice for failure to state a claim, determining that the allegations of the complaint established that defendants had fully complied with ERISA disclosure requirements and that plaintiffs alleged facts established a safe harbor defense pursuant to 29 U.S.C. § 1104(c). ("June 20 decision")  Plaintiffs now move for relief from the judgment pursuant to Rule 59(e), asserting that they have

discovered new evidence and that the June 20 decision contained manifest errors of law and fact. Alternatively, plaintiffs seek leave to file a third amended complaint.

Generally, relief is available under § 59(e) if the movant presents new evidence or demonstrates "a wholesale disregard, misapplication, or failure to recognize controlling precedent." Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000)(quoting with approval Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1998)). Rule 59 is not an opportunity to take umbrage with earlier rulings and rehash old arguments. Id.

Plaintiffs advance three principal arguments in support of their motion: (1) that new evidence further establishes plaintiffs' breach of duty in assessing fees and choosing investment options; (2) that defendants' failure to provide information about revenue sharing is an actionable breach of fiduciary duty notwithstanding compliance with applicable disclosure regulations; (3) that the § 1104(c) safe harbor can not be considered on a motion to dismiss and does not apply when a plan sponsor breaches its fiduciary duty in the selection of investment options. All of plaintiffs' arguments appear to fall within the categories of umbrage and rehash. Nevertheless, each is addressed (or readdressed) on its merits below.

New Evidence

While new evidence is a basis for reconsideration, it does not support reconsideration of a motion to dismiss where all factual inferences were already made in plaintiffs' favor. The Court presumed in its decision that Deere's process in selecting investments was flawed and that Deere was ill-informed in its understanding of costs. Nevertheless, the Court concluded that there was no legally recognizable claim because Deere had fully complied with its disclosure obligation concerning costs and was insulated from suit by the safe harbor provision. Newly discovered facts which tend to show what the Court already presumed in its analysis have no impact on the analysis.

Alternatively, plaintiffs suggest that this newly discovered evidence is the basis for granting its request to file a third amended complaint. A motion to amend may be made post judgment, however establishing that justice requires amendment post judgment is somewhat more difficult. Twohy v. First Nat. Bank of Chicago, 758 F.2d 1185, 1196 (7th Cir. 1985). Generally, failure to proffer an amended complaint with the motion indicates a lack of diligence and good faith. Id. Plaintiff's have not proffered a proposed third amended complaint to consider nor have they suggested that most of the evidence they now assert as new was unavailable prior to dismissal. However it is certain that simply adding additional and more specific allegations of negligence by Deere in its

investment selection would be futile since it would not alter the legal analysis which resulted in dismissal of the second amended complaint.

Certain of the asserted newly discovered evidence relates to conduct of the Fidelity defendants.  Like the other evidence offered, the alleged newly discovered evidence goes merely to amplify the allegations of the second amended complaint and does not impact the legal conclusions in the decision.  The second amended complaint, while affirmatively acknowledging that Deere had exclusive final authority to choose investments, alleged that the fidelity defendants breached their duty to provide sound investment advice.  The Court rejected the claim on two independent bases. First, regardless of any faulty advice, § 1104(c) precludes a claim based on faulty procedures in investment selection.  Second, that Deere had sole authority to select investment options under the terms of the plan and was therefore the only fiduciary with respect to selection.  Additional facts tending to amplify the inadequacy of Fidelity's advice and the extent to which Deere relied upon it does not alter either legal conclusion.

Newly discovered evidence cannot be the basis for relief from a judgment of dismissal of the compliant as a matter of law unless it justifies amendment of the complaint.  Plaintiffs have not demonstrated justification for the untimely request to amend, have not proffered an amended compliant, and have not established how

4

any of the additional evidence would alter the legal conclusions which required dismissal of the second amended complaint.

Failure to Provide Revenue Sharing Information

In challenging the Court's decision that defendants had no duty to inform participants about revenue sharing because regulations do not require it, plaintiffs suggest that the Court has misapplied controlling precedent. Particularly, plaintiffs note holdings that a fiduciary may breach its general fiduciary obligation notwithstanding compliance with ERISA's required disclosures. Varity Corp. v. Howe, 516 U.S. 489, 504 (1996); Schmidt v. Sheet Metal Workers Nat'l Pension Fund, 128 F.3d 541, 548 (7th Cir. 1997). These cases, however, stand not for the proposition that fiduciaries must expand routine disclosures beyond what ERISA requires, but only that fiduciaries may breach their fiduciary duties by making additional misleading affirmative statements to participants and, having made such statements, may not hide behind the fact that they otherwise complied with regulatory requirements. Varity, 516 U.S. at 504-05 (affirmative misrepresentations concerning corporate financial prospects and the likely positive impact on future plan benefits); Schmidt, 128 F.3d at 547-48 (fiduciaries may have responsibilities with respect to agents who make affirmative misrepresentations to participants).

This line of cases does not suggest liability for non-disclosure of information not required by regulation and not necessary to correct a prior misrepresentation. Non-disclosure of revenue sharing by fund managers is not such an affirmative misrepresentation and does not fall within the holdings of these cases. Whether disclosure of revenue sharing is feasible, appropriate or useful to participants and the form such a disclosure should take is the subject of current debate within the Department of Labor. See June 20 decision at 9-10 (discussing pending department of labor amendments to regulations). A plan fiduciary is not obligated to independently resolve this policy debate and alter its disclosures or face a breach of fiduciary duty action. It is entitled to rely on the regulatory requirements to satisfy its disclosure obligations, provided it has not otherwise misled participants.

Plaintiffs assert that defendant Deere made an affirmative misrepresentation when it told participants in the summary plan description that "the costs of administering the plan are paid by the Company." They argue that the statement is misleading because some of the costs of administering the plan were paid implicitly through revenue sharing from the fund level asset-based fees. This argument is simply a restatement of the claim that revenue sharing must have been disclosed. As applied to explicit contract costs for plan administration the SPD statement is true. The SPD further

expressly discloses that investors indirectly pay all fund-level expenses through asset based fees detailed in the fund specific prospectuses.  These statements are entirely accurate except to the extent Deere had a duty to disclose revenue sharing between the fidelity defendants.

Plaintiffs effectively collect policy arguments for requiring some form of disclosure of revenue sharing.  There are contrary arguments that such disclosure would be of limited practical use to participants and that information concerning a non-fiduciary fund manager's disposition of its profits is generally unavailable to the plan administrator.  It was not Deere's obligation to sort out these conflicts.  The Supreme Court, addressing ERISA's reporting and disclosure requirements, noted:

> This may not be a foolproof informational scheme, although it is quite thorough.  Either way it is the scheme Congress devised.  And we do not think Congress intended it to be supplemented by a faraway provision in another part of the statute....

Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73 (1995).  Neither should it be supplemented by the general fiduciary duty provision, coupled with arguments about why the present scheme is inadequate.


Improper Application of 1104(c)

Plaintiffs first fault the Court for addressing the safe harbor defense on a motion to dismiss.  Before addressing plaintiffs' specific challenge to the previous decision, it is

7

useful to consider the Supreme Court's recent exposition on the role of a motion to dismiss and the appropriate standard for granting it.   To survive a motion to dismiss a complaint must allege facts which raise the plausibility of relief above the speculative level.   Bell Atlantic Corp. v. Twombly, 127 S. Ct 1955, 1965 (2007).   The Court emphasized the need to be mindful that basic deficiencies in claims should be exposed at the point of minimum expenditure of time and money by the parties.   Id. at 1967. Thus the Court prescribes a balance between being true to the liberal Rule 8 pleading standard while at the same time being diligent to identify claims which are fundamentally flawed to protect against needless expense and an "in terrorem increment of the settlement value." Id.

Generally speaking, a plaintiff has no obligation to attempt to overcome potential defenses in its complaint.   U.S. Gypsum Co. v. Indiana Gas Co., Inc., 350 F.3d 623 (7th Cir. 2003).   However, if the complaint includes allegations establishing the elements of the defense, it may be dismissed.   Id.   In this case the complaint alleges (and as previously determined, incorporates by reference) an ERISA plan and related documents which are expressly designed and intended to qualify for safe harbor status in accordance with the provisions of 29 U.S.C. § 1104(c).   Satisfaction of the requirements for the safe harbor is largely discernable from the documents.   Under these circumstances, plaintiffs could readily

anticipate that defendants would move to dismiss based on the safe harbor and the documents incorporated by reference.

Considering the second amended complaint in light of these circumstances, it is understandable that plaintiffs devoted five pages of the second amended complaint to detailed allegations intended to overcome the defense.  The implication of these allegations, as understood by the defendants in moving to dismiss, the plaintiffs in responding to the motion and the Court in ruling on it was that the plans complied in other respects with the safe harbor requirements.  Plaintiff contends nevertheless that considering the issue on a motion to dismiss was error because the case involves the fact intensive question whether material information was withheld from participants.  However, the allegedly withheld material information, although it is stated and restated in different forms, ultimately returns to the failure to disclose revenue sharing, raising a question of law properly resolved on a motion to dismiss.

Plaintiffs' safe harbor arguments are contingent on resolution of key threshold legal issues concerning a plan fiduciary's duties with respect to the disclosure of revenue sharing by fund managers. Determining those legal issues is consistent with the standard for a motion to dismiss and the goal to avoid unnecessary cost and expense by resolving dispositive matters of law at the earliest stage in the proceeding.

Finally, plaintiffs ask the Court to reconsider its legal conclusion that a breach of fiduciary duty in the selection of investment options does not preclude application of the § 1104(c) safe harbor provision.  There is no controlling law on the question in the seventh circuit.  Two competing points of view are represented in decisions of the third, fourth and fifth Circuits.

The Fourth Circuit in DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 418 n.3 (2007) held that § 1104(c) "does not apply to a fiduciary's decisions to select and maintain certain investment options" within a 401(k) plan.  In reaching this conclusion the Court relied upon a footnote to the ERISA regulations, 57 Fed. Reg. 46906, 46924 n.27 ("footnote 27"), and on several federal district court decisions in accord.  Id. (collecting relevant lower court supportive authority). According to DiFelice's analysis, if a plan sponsor includes one or more imprudent investment options within the menu of options available under the plan, it is subject to a claim for breach of fiduciary duty by participants who opt for an imprudent investment, notwithstanding the plan complies with all requirements for 1104(c) status.

The Fifth Circuit in Langbecker v. Electronic Data Systems Corp, 476 F.3d 299 (2007), considered and rejected footnote 27 to the extent it is interpreted to preclude application of the safe harbor to allegedly imprudent investment options.

10

> We conclude that [footnote 27] is not
> reasonable. Most important, the footnote does
> not reasonably interpret 404(c) itself,
> because it contradicts the governing statutory
> language in cases where an individual account
> plan fully complies with the regulations'
> disclosure diversification and participant-
> control provisions and loss is casued,
> notwithstanding some other fiduciary breach,
> by the participants' investment decisions.

Id. at 311.  The Court noted that denying the defense to a fiduciary who breached a duty in selection would render the defense meaningless.  Id. at 311.  It endorsed the earlier third Circuit decision in In re Unisys Sav. Plan Litigation, 74 F.3d 420 (1996), which permitted a fiduciary accused of breach in the selection to nevertheless assert a § 1104(c) defense, noting that Unisys embodies a common sense interpretation of the statute.

The Court continues to endorse the view that allegations of breach in the selection of investment options does not foreclose a § 1104(c) safe harbor defense where, as here, the plan provides for the requisite disclosure, diversification and control.  The point of the safe harbor provision is to preclude claims that, although there was a broad array of fully described options in which to invest, participants might have achieved a better return (or lost less) if only the plan sponsor had chosen different options with better returns or lower costs.  That aptly describes the allegations of the second amended complaint. Because the Court continues to believe that Unisys and Langbecker are the better

reasoned view of the statute, it declines to reconsider its prior ruling concerning the availability of the § 1104(c) defense.

IT IS ORDERED that plaintiffs' motion to alter or amend judgment is DENIED.

Entered this 19th day of October, 2007.

BY THE COURT:

/s/

_____
JOHN C. SHABAZ
District Judge