124 6/07

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

**DENNIS HECKER, et al.,**
**individually and on behalf of all those**
**similarly situated**

        **Plaintiffs,**

**v.**

**DEERE & COMPANY, FIDELITY**
**MANAGEMENT TRUST COMPANY, and**
**FIDELITY MANAGEMENT & RESEARCH**
**COMPANY,**

        **Defendants.**

**CASE NUMBER: 06-C-0719-S**

## PLAINTIFFS' OBJECTIONS TO
## THE FIDELITY DEFENDANTS' BILL OF COSTS

Plaintiffs object to the Bill of Costs filed by Defendants Fidelity Management &

Research Company and Fidelity Management Trust Company (collectively "Fidelity

Defendants").

## ARGUMENT

The U.S. Supreme Court has held that the kinds of costs recoverable through Rule

54(d) of the Federal Rules of Civil Procedure are limited to those enumerated in 28 U.S.C.

§ 1920. *Crawford Fitting Co. v. J.T. Gibbons Co.,* 482 U.S. 437, 442 (1997).[1] Thus, in

examining a bill of costs, the court must first determine that the expense is allowable

under section 1920. *Northbrook Excess & Surplus Insur. Co. v. Proctor & Gamble Co.,*

---

[1] The costs recoverable under Rule 54(d) are limited to those outlined in 28 U.S.C. § 1920, although a much broader range of costs is recoverable under a fee-shifting statute, such as 42 U.S.C. § 1988 or 29 U.S.C. § 1132(g). *Heiar v. Crawford County Wisconsin,* 746 F.2d 1190, 1203-04 (7th Cir. 1984). Accordingly, the fact that Plaintiffs here oppose taxation of a particular cost under Rule 54(d) and 28 U.S.C. § 1920 does not mean that they would not seek its recovery under 29 U.S.C. § 1132(g) if they are successful with their appeal and are eventually found to be the prevailing party.

1

924 F.2d 633, 642 (7th Cir. 1991). Next, if a claimed expense falls into one of section 1920's enumerated categories, the court must determine that the amounts are both reasonable and necessary. *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir.2000).

Fidelity has sought two categories of costs: deposition costs and "copying costs." Although both of these costs are assigned to recoverable categories, only certain of the claimed expenses actually fall within these categories or were "reasonable" and "necessary."

## I. TAXABLE COPYING COSTS

Section 1920(4) allows a party to recover costs for "exemplification of documents necessarily prepared for use in the case." The phrase "for use in the case" refers to materials actually prepared for use in presenting evidence to the court. *EEOC v. Kenosha Unified S. Dist. No. 1*, 620 F.2d 1220, 1227-28 (7th Cir. 1980) (citation omitted). Costs for copying court documents retained for a party's own use are not recoverable.

Plaintiffs object to most of the copying costs claimed by the Fidelity Defendants. In order to obtain the cost of copies, a party must provide a breakdown of the costs claimed, consisting of at least "a chart identifying the nature of each document copied, the number of copies of each document prepared, the number of pages in each document, the copying cost per page, and the total copying cost." *Tony Jones Apparel, Inc. v. Indigo USA LLC*, No. 03 C 0280, 2005 WL 3115234 at *4 (N.D. Ill. Nov. 16, 2005). The Fidelity Defendants have failed to do so for nearly all of their copying costs. For this reason, Plaintiffs object to paying any of the copying costs contained in Exhibits 31-33 because the Fidelity Defendants have provided no description at all of what documents were copied or why. *Arachnid, Inc. v. Valley Recreation Products, Inc.*, 143 F.R.D. 192,

2

193 (N.D. Ill. 1992) (denying copying costs where bills submitted did not contain detail regarding their use). Although they are generically identified as "Discovery provided in compliance with plaintiffs' requests," there is no number of pages given so that Plaintiffs could correlate the dollar amounts for which reimbursement is sought with the documents that were actually produced to them. Also, although local counsel's in-house bills indicate a $.15 charge and list the number of copies made, along with the dates on which the copies were made, so that a comparison can be made between the claimed copying costs and the documents filed with the Court, no such breakdown is given for the copies made at the outside vendors. See Defs. Ex. 37-B (listing only total dollars paid, giving only month in which cost was incurred). The $137.54 listed on Exhibit 37-B is not recoverable. The non-taxable copying costs on Defendants' Exhibits 31-33 and 37-B total $151,607.40.

Plaintiffs have additional objections to the claimed copying costs on Exhibits 34 and 35.[2] The Fidelity Defendants have including as "copying costs" items that were not "copying," such as delivery, repository costs, technical consulting, and "electronic discovery services." Delivery costs are not recoverable. *Aebischer v. Stryker Corp.*, 2007 WL 1668065, at *9 (C.D. Ill. Jun. 8, 2007) (delivery costs not recoverable). See also Pl. Ex. 3 (refusing to tax delivery costs). On Exhibit 34, there is $150.00 in delivery costs that are not taxable.

---

[2]      To the extent that the Court does not reject the amounts claimed on Defendants' Exhibits 31-33 outright, these same objections apply as well to amounts claimed from those invoices as well. Plaintiffs include a separate calculation for these items.

3

No explanation or description is provided for the "Electronic Discovery Services"[3] or for the "technical consulting" and thus these costs are not recoverable either. *See Glenayre Electronics,* 2003 WL 21947112, at *4. *See also Am. Auto. Accessories, Inc. v. Fishman,* 991 F. Supp. 995, 997 (N.D. Ill. 1998) (same); *Place v. Abbott Labs.,* No. 94 C 5491, 1999 WL 569580, at *3-4 (N.D. Ill. Jul. 30, 1999) (denying copying costs where court could not determine from invoice whether copies were necessary for use in the case). There is a $750 charge for "technical consulting" that is not taxable on Exhibit 34.

The Fidelity Defendants do not appear to be charging for the "redacted" portions of their bills found in Defendants' Exhibits 31-33, although they do appear to be seeking recovery of the redacted amounts on Exhibits 34 and 35. *See, e.g.,* Defs' Ex. 31 ($13,988.48 described as "Redacted"). These costs are not taxable, as it is impossible for anyone to determine what was done, and whether it was reasonable or necessary. *Glenayre Electronics, Inc. v. Jackson,* 2003 WL 21947112, at *3-4 (N.D. Ill. Aug. 11, 2003) (refusing to tax copying costs where party presented a redacted bill that gave no indication of the nature of the documents copied or their intended use); *Arachnid,* 143 F.R.D. at 193 (refusing to tax copying costs based on redacted bill that did not provide detail of what copies were to be used for). On Defendants' Exhibit 34, $1045 in

---

[3]    The charges appear to refer to the "processing" of "Source GB," according to the "Schedule Detail" on page 2 of Defendants' Exhibit 31, rather than to some type of copying cost per page. To the extent that this was a cost connected with "searching" for documents, it is not recoverable as a "copy" cost. *Aebischer v. Stryker Corp.,* 2007 WL 1668065, at *9 (C.D. Ill. Jun. 8, 2007) ("Defendants' request for hourly charges for document searching" not recoverable under section 1920"); *NLFC, Inc. v. Devcom Mid America, Inc.,* 916 F. Supp. 751, 764 (N.D. Ill. 1996) (refusing to allow recovery of defendants' internal costs of producing documents). Further, because of the lack of information about what was being copied or searched, Plaintiffs cannot determine whether the charges for these activities were reasonable, even if they could somehow be wedged into one of the recoverable categories of costs under section 1920(d). For example, some 20,000 documents produced by the Fidelity Defendants consisted of prospectuses that were produced in paper form. Plaintiffs object to paying any electronic discovery costs for those documents, but cannot tell whether these documents are included in the approximately $159,000 worth of copying costs claimed by the Fidelity Defendants.

"copying" costs is attributable to "redacted" activities and should not be taxed. Plaintiffs' Exhibit 1 lists these types of non-taxable expenses on Defendants' Exhibits 34 and 35 and provides a summary of all costs taxable. The total comes to $6970.74.

To the extent that the Court does not reject outright the costs on Defendants' Exhibits 31-33, Plaintiffs have additional objections. Plaintiffs also object to paying the "redacted" costs, "electronic discovery services" and "processing" charges and the delivery charges found on those exhibits. Plaintiffs have listed these costs on Exhibit 2 and provided a second, alternative calculation of total costs taxable.

## II. TAXABLE DEPOSITION COSTS

The Judicial Conference of the United States Courts has published guidelines for determining whether a transcript cost is reasonable. Pl. Ex. 4. This Court follows those guidelines. Pl. Ex. 3.[4] According to the Judicial Conference standards in effect at the time the depositions were taken a party may recover $4.40 per page for an original expedited transcript, and $.75 per page for an expedited copy (available in less than 30 days) transcript. Only one party pays for the "original." Accordingly, the Fidelity Defendants cannot recover at the "original" rate since it did not notice any depositions and Deere has already billed for the "original" of the three depositions it noticed – Dennis Hecker, Jonna Duane, and Janice Riggins. The remainder of the depositions are "copies" and Fidelity is entitled only to the "copy" rate.

This district generally disallows recovery of costs for ASCII transcripts, CDs, and other litigation support devices as a matter of course. Pl. Ex. 3 at 2. Likewise, delivery

---

[4] On October 19, 2007, this Court adopted the September 2007 Judicial Conference transcript fee schedule. Judge Crabb's order states only that the rates apply "as of October 18." The new rates were intended to apply only to depositions taken while they were in force. *See Cooper v. White*, 2007 WL 647342, at *2 (N.D. Ill. Feb. 28, 2007) (using rates "in effect on the date the deposition was taken"). Accordingly, Plaintiffs have used the pre-September/October rates.

costs are not taxable in this district. *Id.* Further, since the depositions were emailed or available through email, there is even less need to tax delivery costs. *See* Ex. 5 (email showing transcript was emailed). Although the Fidelity Defendants may claim that they needed ASCII disks, Etrans copies, and condensed transcripts due to the accelerated discovery schedule, they do not explain why they needed additional copies of the depositions beyond the first expedited transcript copy they ordered. In fact, the Fidelity Defendants purchased four separate copies of most of the depositions. *See, e.g.,* Ex. 6 at 1 (5-day expedited, expedited rough ASCII disk, condensed transcript and CD Rom w/ ASCII and Etrans). For purposes of cost recovery under § 1920(d), a copy of a deposition on a disk, an E-trans copy, and a condensed or "mini" transcript are all deemed "copies," despite the difference in format. If the need was for expedition in order to present its case, the Fidelity Defendants achieved that with the first copy. The remaining copies were purely for their own convenience and are not taxable. Plaintiffs do not challenge the "archiving" fees and exhibit fees.

The Fidelity Defendants also seek recovery of their costs for video and DVD reproduction. The Court does not allow the recovery of these expenses as a matter of course. See Pl. Ex. 3. The party seeking reimbursement must show some more pressing need for what amounts to an additional copy of the transcript. Although the Fidelity Defendants cite a case in which a party was allowed to recover the costs of videotaping a deposition it noticed as a video deposition, it has offered no other reason for incurring those costs. *Compare Jacobs v. University of Wisconsin Hosp. and Clinics Auth.*, 12 Fed. Appx. 386, 390 (7th Cir. 2001) (upholding award of costs of videotaping a deposition that the defendant noticed as a video deposition). The Fidelity Defendants did not notice any

of the depositions.  Further, they would not have had to worry about any witness'

unavailability, since they could always compel their own employees' attendance and had

a joint defense agreement with Deere, presumably enabling it to arrange for those

witnesses to be present at trial.  See Wilks Dep. at 12, attached as Exhibit 7.  This is not

a reason for recovering the costs of DVD/videos.[5]

Accordingly, only $3587.10 in deposition transcript costs are properly taxable.

Plaintiffs have detailed these costs on Exhibit 8.

## THE TAXATION OF COSTS SHOULD BE STAYED

Plaintiffs first ask the Court to stay taxation of costs, and consideration of the

amount of costs, until after the appeal is resolved.  At the very least, even if the

Court decides to consider the bill now, Plaintiffs ask the Court to stay taxation of the

costs until after the appeal is resolved. *See Hunt Const. Group, Inc. v. Allianz Global

Risks U.S. Ins. Co.*, 2007 WL 2316460, at *4 (S.D. Ind. Aug. 15, 2007) (reducing bill to

recoverable dollar amount; staying taxation until after the appeal).

## CONCLUSION

The Fidelity Defendants are entitled to only $6960.74 in copying costs and only

$3587.10 in deposition costs.  Plaintiffs respectfully ask that these costs not be taxed until

the appeal of the merits is concluded.

---

[5]      And of course, the costs of delivering the video are not taxable either in this district.

Attorneys for Plaintiffs

**Schlichter, Bogard & Denton**

Jerome J. Schlichter
Elizabeth J. Hubertz
Troy A. Doles
100 South Fourth Street
Suite 900
St. Louis, MO 63102
Tel:    314-621-6115
Fax:    314-621-7151
Lead Counsel for Plaintiffs

Kim Grimmer
Jennifer L. Amundsen
SOLHEIM BILLING & GRIMMER S.C.
U.S. Bank Plaza, Suite 301
One South Pinckney Street
P.O. Box 1644
Madison, WI  53701
Tel:    608-282-1200
Fax:    608-282-1218
Local Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served via regular mail and email on November 30, 2007 upon the following counsel of record:

| | |
|---|---|
| Sari M. Alamuddin<br>Morgan, Lewis & Bockius LLP<br>77 West Wacker Drive, Sixth Floor<br>Chicago, IL 60601<br>Tel: 312.324.1158<br>Fax: 877.432.9652<br><br>Counsel for Deere & Company | Mark A. Camelli<br>Lewis W. Beilin<br>Reinhart Boerner Van Deuren<br>1000 North Water Street<br>P.O. Box 2965<br>Milwaukee, WI 53201<br>Tel: 414.298.1000<br>Fax: 414.298.8097<br><br>Counsel for Fidelity Management Trust Company and Fidelity Management & Research Company |
| Robert Eccles<br>Brian Brooks<br>O'Melveny & Myers LLP<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Tel: 202.383.5300<br>Fax: 202.383.5414<br><br>Counsel for Fidelity Management Trust Company and Fidelity Management & Research Company | James Fleckner<br>Goodwin Proctor LLP<br>53 State Street<br>Exchange Place<br>Boston, MA 02109<br>Tel: 617.570.1153<br>Fax: 617.523.1231<br><br>Counsel for Fidelity Management Trust Company and Fidelity Management & Research Company |

COUNSEL FOR PLAINTIFFS

**PLAINTIFFS' EXHIBIT ONE**
**HECKER v. DEERE & COMPANY**
**Case No. 06-CV-719-S**

**Non-Taxable Copying Costs Claimed by the Fidelity Defendants From Defendants' Exhibits 34 and 35**

Delivery Costs on Defendants' Exhibits 34 and 35

| Source | Description | Amount |
|---|---|---|
| Def Ex 34 | Upload 3/20/07 | $50.00 |
| | Upload 3/21/07 | $50.00 |
| | Upload 3/23/07 | $50.00 |
| TOTAL | | $150.00 |

Technical Consulting Services on Defendants' Exhibits 34 and 35

| Source | Amount |
|---|---|
| Def Ex 34 | $   750.00 |

Redacted Items on Def. Exs. 34 and 35

| Source | Description | Amount |
|---|---|---|
| Def Ex 34 | Redacted | $540.00 |
| | Redacted | $505.00 |
| | | |
| TOTAL | | $1045.00 |

## TOTAL TAXABLE COPYING COSTS

| Source | Amount | |
|---|---|---|
| Def. Ex. 31 | $0.00 | |
| Def. Ex. 32 | $0.00 | |
| Def. Ex. 33 | $0.00 | |
| Def. Ex. 34 | $3252.74 | |
| Def. Ex. 35 | $2355.00 | |
| Def. Ex. 36 | $703.50 | |
| Def. Ex. 37-A | $649.50 | |
| **TOTAL** | **$6960.74** | |

**PLAINTIFFS' EXHIBIT TWO**
**HECKER v. DEERE & COMPANY**
**Case No. 06-CV-719-S**

**Non-Taxable Copying Costs Claimed by the Fidelity Defendants From Defendants'
Exhibits 31, 32, and 33**

Non-Taxable Electronic Production Services

| Source | Amount |
|--------|--------|
| Def Ex 31 | $109,568.00 |
| Def Ex 32 | $ 24,538.00 |
| Def Ex 33 | $ 6,916.00 |
| | |
| TOTAL | $141,022.00 |

Non-Taxable Delivery/Shipping Costs

| Source | Amount | Date/Description |
|--------|--------|------------------|
| Def Ex 31 | $ 17.48 | FTP Delivery |
| Def Ex 32 | $ 58.58 | FTP Delivery |
| Def Ex 33 | $ 42.11 | FTP Delivery |
| TOTAL | $ 118.17 | |

## TOTAL TAXABLE COPYING COSTS

| Source | Amount | |
|---|---|---|
| Def. Ex. 31 | $3173.51 | |
| Def. Ex. 32 | $2023.05 | |
| Def. Ex. 33 | $5132.11 | |
| Def. Ex. 34 | $3252.74 | |
| Def. Ex. 35 | $2355.00 | |
| Def. Ex. 36 | $703.50 | |
| Def. Ex. 37-A | $649.50 | |
| **TOTAL** | **$17,289.41** | |

85

SB&G
Received & Scanned
2/30/07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

DOCKET #
U.S. DISTRICT COURT
WEST DIST. OF WISCONSIN

MAR 1 9 2007

HYPERPHASE TECHNOLOGIES, LLC, and
HYPERPHASE, INC.,

Plaintiffs,

v.

GOOGLE INC.,

Defendant.

THERESA M. OWENS CLERK

BILL OF COSTS

06-C-199-S

Defendant requests the Clerk to tax the following costs and disbursements pursuant to 28

U.S.C. § 1920. Judgment was entered in this action on December 21, 2006.

| Description | Amount |
|---|---|
| Fees for service of summons and subpoena | $ 214.00 |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case | 3,287.23 |
| Fees for exemplification and copies of papers necessarily obtained for use in case | 38,407.38 |
| **TOTAL** | **$ 41,716.81** |

Title 28, Section 1920(1) of the United States Code authorizes fees for service of subpoenas.

Collins v. Gorman, 96 F.3d 1057, 1059 (7th Cir. 1996). Fees cannot exceed amounts charged by the

U.S. Marshal Service. Id. at 1060. The U.S. Marshal Service charges $45.00 per hour. Defendant

invoice lists a cost of $165.00 for rush service. Only $45.00 of the service fee is reimbursable. The

service fees are reduced to $94.00 ($49.00 and $45.00).

Defendant seeks reimbursement of $3,287.23 in transcript costs. The costs sought must comply

with the rates established by the Judicial Conference. The Judicial Conference regular rate for an

original transcript is $3.30. Plaintiffs request a reduction of $1,651.88 for transcript costs.

Gregory Bradros $539.00 + $151.80 (exhibits) = $690.80
Gueorgui Djabarov $445.50 + $69.85 (exhibits) = $515.35
Sergei Nirenburg $429.20

EXHIBIT
3

Defendant incurred additional costs to videotape the deposition of Sergei Nirenburg. Federal Rule of Civil Procedure 30(b)(4) was amended in 1993 by deleting "at party's own expense." The costs of a stenographic transcript and videotape of a deposition may be taxed against a party. <u>Jacobs v. University of Wisconsin Hosp. and Clinics Auth</u>, 12 Fed. Appx. 386, 390 (7th Cir. 2001). However, defendant is still limited to recover only reasonable and necessary costs. The advisory committee notes relevant to the 1993 amendment state "[a] party choosing to record a deposition only by videotape or audiotape should understand that a transcript will be required by Rule 26(a)(3)(B) and Rule 32(c) if the deposition is later to be offered as evidence at the trial or on a dispositive motion under Rule 56." Defendant provides no explanation as to why it was necessary to videotape the deposition (such as the witnesses anticipated unavailability for trial). Defendant's request for costs related to videotaping the deposition is denied. Costs for "litigation support packages," rough disks and shipping and handling are not taxable. Transcripts costs in the amount of $1,635.35 are awarded.

Defendants seeks reimbursement of $38,407.38 in copying costs. The following costs were incurred for the convenience of counsel and will be removed. In the second declaration of Valerie Anderson, defendant identifies costs for "misc. copies of pleadings and production documents for attorney or expert review" totaling $3,302.40 and "copies for use at deposition or for witness preparation" totaling $763.88. In addition four invoices include costs for assembly of documents (Inv. Nos. 30010, 30162, 30403 and 29802) totaling $1,059.43. Taxable copying costs total $33,281.67.

Costs are taxed in the amount of **$35,011.02** and included in the judgment.

Dated this _19 7th_ day of March, 2007.

_Theresa M. Owens_
Theresa M. Owens
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RE: TRANSCRIPT FEE RATES

ORDER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      IT IS ORDERED that as of October 18, 2007, the maximum rates that may be charged for court transcripts are as set out in the attachment.

      Entered this _____ *19th* ___ day of October, 2007.

                                BY THE COURT:


                                *Barbara B. Crabb*
                                BARBARA B. CRABB
                                District Judge

1

## MAXIMUM TRANSCRIPT RATES - ALL PARTIES
### PER PAGE

| | Original | First Copy to Each Party | Each Add'l Copy to Same Party |
|---|---|---|---|
| **Ordinary Transcript**<br>A transcript to be delivered with thirty (30) calendar days after receipt of an order. | 3.65 | .90 | .60 |
| **14-Day Transcript**<br>A transcript to be delivered within fourteen (14) calendar days after receipt of an order. | 4.25 | .90 | .60 |
| **Expedited Transcript**<br>A transcript to be delivered within seven (7) calendar days after receipt of an order. | 4.85 | .90 | .60 |
| **Daily Transcript**<br>A transcript to be delivered following adjournment and prior to the normal opening hour of the court on the following morning whether or not it actually is a court day. | 6.05 | 1.20 | .90 |
| **Hourly Transcript**<br>A transcript of proceedings ordered under unusual circumstances to be delivered within two (2) hours. | 7.25 | 1.20 | .90 |
| **Realtime Transcript**<br>A draft unedited transcript produced by a certified realtime reporter as a byproduct of realtime to be delivered electronically during proceedings or immediately following adjournment. | 3.05 | 1.20 | |

## MAXIMUM TRANSCRIPT RATES - ALL PARTIES
## <u>PER PAGE</u>

| | Original | First Copy to Each Party | Each Add'l Copy to the Same Party |
|---|---|---|---|
| <u>Ordinary Transcript</u><br>A transcript to be delivered within thirty (30) calendar days after receipt of an order | 3.30 | .75 | .50 |
| <u>Expedited Transcript</u><br>A transcript to be delivered within seven (7) calendar days after receipt of an order | 4.40 | .75 | .50 |
| <u>Daily Transcript</u><br>A transcript to be delivered following adjournment and prior to the normal opening hour of the court on the following morning whether or not it actually is a court day | 5.50 | 1.00 | .75 |
| <u>Hourly Transcript</u><br>A transcript of proceedings ordered under unusual circumstances to be delivered within two (2) hours | 6.00 | 1.00 | .75 |
| <u>Realtime Transcript</u><br>A draft unedited transcript produced by a certified realtime reporter as a byproduct of realtime to be delivered electronically during proceedings or immediately following adjournment. | 1.00 | 1.00 | |

<u>Transcript in CJA Cases</u>
In multi-defendant cases involving CJA defendants, no more than one transcript should be purchased from the court reporter on behalf of CJA defendants. One of the appointed counsel or the clerk of court should arrange for the duplication, at commercially competitive rates, of enough copies of the transcript for each of the CJA defendants for whom a transcript has been approved. The cost of such duplication will be charged to the CJA appropriation. This policy would not preclude the furnishing of duplication services by the court reporter at the commercially competitive rate.

December 2004



EXHIBIT

4

In order for the public to be aware of the maximum transcript fees to be charged, a schedule of the prescribed fees is to be posted prominently in the Clerk's office." (Report of the Proceedings of the Judicial Conference of the United States, March 1982, page 9.)

Due to the potentially widespread use by parties of diskette copies of transcripts, the Conference approved an increase in the rates allowed for diskette transcripts to make these rates the same as those allowed for paper transcripts....No additional charge is permitted for the cost of the diskette itself....The transcript copy filed with the clerk of court pursuant to 28 U.S.C. § 753(b) must be on paper; diskettes may be sold only if a paper copy is produced, certified, and filed with the clerk of court for the records of the court." (Report of the Proceedings of the Judicial Conference of the United States, September 1991, page 65.)

Effective June 1, 1996, the Judicial Conference defined the category of "realtime unedited transcript" as "a draft transcript produced by a certified realtime reporter as a byproduct of realtime to be delivered electronically during the proceedings or immediately following adjournment". (Report of the Proceedings of the Judicial Conference of the United States, March 1996, page 26.)

The Judicial Conference approved a modification to the transcript fee rates for realtime unedited transcripts provided by certified realtime reporters to establish the maximum page rate authorized for the provision of realtime services, including the production and distribution of realtime unedited transcripts, to be $1.00 per page. Litigants who order realtime services, and subsequently order an original certified transcript of the same proceeding, will not receive a credit toward the purchase cost of the certified transcript. (Preliminary Report of the Proceedings of the Judicial Conference of the United States, September 1997, page 12.)

December 2004

**PART 20.5  Setting the Rate by the Court.**

Judicial Conference Policy.

"In setting the transcript rates to be charged by the court reporters in each area, the
district court should look to comparable services rendered in state courts and consider
setting the transcript rates in their courts to coincide with any lower comparable state
rate.  No other types of transcripts are authorized, other than those defined above.
Litigants and parties have the privilege and right to order transcripts at the rate fixed by
each district court, not to exceed the above maximum rates.  A notice of the rates
established by the district courts and of the reporter's obligation to furnish transcripts at
those rates and under those conditions shall be published in a conspicuous place or
otherwise disseminated to the public." (Report of the Proceedings of the Judicial
Conference of the United States, March 1980, page 18.)

December 2004

**PART 20.6  Justifying Higher Rates.**

20.6.1  Judicial Conference Policy.

"The Committee [on Court Administration] recognized that situations may exist in some specific districts justifying higher rates for those districts alone.  Upon the recommendation of the Committee, the Conference authorized the Director of the Administrative Office to increase transcript rates for original transcripts only by no more than 20 percent of the existing maximum rate when, in the Director's judgment, a district court justifies such an increase." (Report of the Proceedings of the Judicial Conference of the United States, March 1981, pages 7 and 8.)

20.6.2  Procedure for Requesting Higher Rates.

20.6.2.a  <u>Court</u>.  The chief judge of the district court should submit a letter to the Director of the Administrative Office stating the amount of higher rate requested and for which types of transcript. The letter should include the following information:

(1)  The official transcript fees corresponding to ordinary, expedited, daily, and hourly transcript categories of employees in state and municipal courts.

(2)  The beginning and top salaries for state and municipal court reporters.

20.6.2.b  <u>Administrative Office</u>.  The Director of the Administrative Office compares the salaries to that of federal court reporters and compares the margins of profit from the reporters' annual statements of earnings.  After this comparison, the Director notifies the chief judge whether or not the increase is justified and approved.

**PART 20.7  Scope.**

The maximum rates adopted by the Judicial Conference apply to official staff, temporary, combined position, contract, and substitute reporters, and transcribers.  All reporters and transcribers are responsible for correct billings.

**PART 20.8  What the Fees Include.**

20.8.1  Transcript Production.

The fees cover all costs of transcript production.

December 2004

20.8.2  Original Fees.

For any given proceeding/date there can only be one original charge.  All other transcripts of the same proceeding shall be at the copy rates.

20.8.3  Expedited, Daily, and Hourly Transcripts.

In the case of expedited, daily, hourly and realtime unedited transcripts, the approved fees are to cover the above items, as well as payments to extra reporters, typists, and transcribers to help produce the transcript.

20.8.4  Copy Fees.

A copy fee is charged if the party orders and receives a copy.

20.8.5  Fees for Sale of Transcript on Computer Tape or Diskette.

The rates allowed for diskette transcripts are the same as those allowed for paper transcripts whether they represent originals, first copies, or additional copies.  No additional charge is permitted for the cost of the diskette itself.

20.8.6  Compressed Transcripts.

The maximum per page rate for each compressed original or copy of a transcript is the same as that for a full-size transcript.

20.8.7 Example of Fee Calculation.

A party orders an original and one copy of an ordinary transcript of 50 pages.  The court reporter charges the party at a rate of $3.00 per page for the original and $.75 per page for the copy.  The court reporter bills the party $150.00 for the original and $37.50 for the copy for a total bill of $187.50, delivering both the original and the copy to the party.  The court reporter also delivers to the clerk of court (through the court reporting supervisor) a copy of the transcript for the records of the court at no charge to the party or court. Another party orders two copies of the same transcript.  The court reporter charges this party at a rate of $.75 per page for the first copy and $.50 per page for the second copy. The court reporter bills the party $37.50 for the first copy and $25.00 for the second copy for a total bill of $62.50.

December 2004

## Troy Doles

**From:** Cyndi Roberts [reportingservices@earthlink.net]
**Sent:** Tuesday, June 19, 2007 7:23 AM
**To:** Troy Doles; cjackson@morganlewis.com; atrask@omm.com; sbarrett@omm.com
**Subject:** ***FINAL TRANSCRIPT*** Hornbuckle, Mertroe - E-Transcript File Delivery
**Importance:** High

**Attachments:** 060807 mertroe hornbuckle.ptx

**Cyndi Roberts**
**Production Dept.**
**Herring Reporting Services**
**2516 E. 40th Street**
**Davenport, IA 52907**
**800.332.0503**
**herringreporting@earthlink.net**
Attached to this e-mail is an E-Transcript file.

If this is the first time you have received a .ptx format transcript, or you are a Macintosh user, you will need to browse to <http://www.reallegal.com/software.asp> and download the free E-Transcript Viewer.

Each E-Transcript file is stored in a secure format with built-in virus protection, hyperlinked word index, and condensed and word index printing capabilities. E-Transcript files dramatically reduce the time you spend digesting and summarizing transcripts.

Double-click on the attachment to display the transcript. You will be prompted for a folder to save it in. Once saved, the transcript will automatically display. Please remember which folder you saved it to for future reference.

If your email package requires you to save attachments before opening them, you should do so. PC users then go to Windows Explorer, double-click on the E-Transcript file in the directory you saved it in and it will open. Macintosh users please visit: <http://www.reallegal.com/techsupport/etxmac.asp>.

For FREE technical support visit <http://www.reallegal.com/support.asp>.

-------------------------------------------------------------
Transcript management in RealLegal Binder.
Hyperlinked Briefs with E-Brief.
Visit <http://www.reallegal.com/attorneys.asp>

EXHIBIT

5

11/09/2007 14:00 FAX  617-956-9911        Esquire                    ☑015/015

**Esquire Deposition Services, LLC**
**A Hobart West Company**
Tax ID # 22-3779684                    9945    ROTHD01
99 Summer Street, Suite 804
Boston, Massachusetts 02110
617-956-9920     FAX 617-956-9911

O'Melveny & Myers, LLP
625 Eye Street                        11096EBO   05/23/07
Washington, DC
                                                 11/09/07

ATTN : Robert Eccles, Esq.


HECKER, DENNIS ET AL V. DEERE & CO ET AL

SERVICES PROVIDED ON 05/10/07:
Paul Montecalvo-(9am)          1- 251   251 PGS @ $2.95      740.45  1CC

5 Day Expedited - copy      60%      251 @  $1.77          444.27
Rough ASCII Disk                     251 @  $1.50          376.50
Condensed Transcript                                        25.00
CD ROM w/ASCII + E-Tran                                     35.00
Archiving Fee                                               20.00
UPS Shipping                                                15.75
Thank you


             PAYMENTS RECEIVED                    -1,656.97

                 BALANCE DUE                         0.00

Any amounts not paid within 30 days of the invoice will be considered past
due and a late charge will accrue on any unpaid balance at the lesser of      **For Invoice Questions,**
one and one-half percent (1.5%) per month or the maximum rate allowed by law.        **Please Call**
Contact us immediately with questions or corrections regarding billing or payment.   (617) 956-9920
No adjustments or refunds will be made after 120 days from date of payment.      Fax (617) 956-9911

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    Esquire Deposition Services, LLC    JOB: 9945  TOT: $0.00
    P.O. Box 785751                      INVOICE #: 11096EBO
    Philadelphia, PA 19178-5751          DATE: 11/09/07
    Tax ID # 22-3779684


    O'Melveny & Myers, LLP
    Attn: Robert Eccles, Esq.
    625 Eye Street
    Washington, DC



# \*\*\*ROUGH DRAFT\*\*\*

## Condensed Transcript of the Deposition of
# **Pamela Wilks**

**Date:** April 12, 2007

**Case:** Hecker v. Deere & Company

Herring Reporting Services
Phone: 563-355-0503
Fax: 563-355-2968
Email: herringreporting@earthlink.net



EXHIBIT

7

Page 10

1    first set of request -- I'm sorry, the first set
2    of interrogatories to Deere and Company?  Because
3    there have been three served.  I'm just trying to
4    understand which one you may have looked at, the
5    first, the second or the third.
6        A.  The first.
7        Q.  To your knowledge, have you seen the
8    second set of interrogatories or the third set of
9    interrogatories?
10       A.  There was one other set, but I cannot
11   tell you if it's the second or third.
12       Q.  Did you have any discussions with anyone
13   on behalf of Fidelity regarding your deposition
14   today?
15       A.  No.
16       Q.  Have you discussed this case with anyone
17   from Fidelity?
18       A.  Yes.
19       Q.  Who have you spoken to from Fidelity
20   about this case?
21       A.  Joanne Morlan.
22       Q.  Who else?
23       A.  David Moore.
24       Q.  Anyone else?
25       A.  No.

Page 11

1        Q.  Have you discussed this lawsuit with
2    anyone from Hewitt and company?
3        A.  No.
4        Q.  Have you discussed this lawsuit with any
5    other service provider for 401(k) plans?
6        A.  No.  Could you re-ask me the question
7    dealing with attorneys from -- or something to do
8    with Fidelity before -- if I talked to anyone
9    else?  Could you repeat that question for me?
10       Q.  Before my question --
11       A.  It was about two back.  Could you ask
12   me --
13       Q.  Before the one about Fidelity?  Well,
14   let's see.  Why don't we have the court reporter
15   read it back.
16       A.  The one about talking to anyone from
17   Fidelity.
18           (The reporter read the requested
19   portion of the record.)
20       A.  I would like to change that to yes.
21       Q.  So you've met -- I'm sorry, you've
22   discussed the case with Joanne Morlan and David
23   Moore from Fidelity, correct?
24       A.  Yes.  I could use the word discussed.
25       Q.  Have you met, face to face, with anyone

Page 12

1    from Fidelity about this lawsuit?
2        A.  Yes, Shannon.
3        Q.  When did you -- when you say Shannon,
4    who are you referring to?
5        A.  Shannon -- I'm sorry, I forgot your last
6    name.
7        Q.  Shannon Barrett?
8        A.  Yes, one of the attorneys representing
9    Fidelity, and I met him yesterday.
10       Q.  Did you discuss your deposition with
11   Mr. Barrett?
12           MR. JACKSON:  At this point, I'll
13   instruct the witness not to answer.  Mr. Barrett
14   met with us, we have a joint defense agreement
15   with Fidelity, and it's privileged conversation.
16       Q.  Did Mr. Barrett show you any documents
17   in anticipation of your deposition today?
18           MR. JACKSON:  Same objection.
19           MR. DOLES:  About documents?
20           MR. JACKSON:  You can -- you can't
21   get into what our work product is.  If you want to
22   show her something and ask her if she's seen it
23   before, you're free to do that.  But you can't
24   probe with what Barrett or what I or what anyone
25   else did defending this case.  You're free to show

Page 13

1    her a document.
2        Q.  Well, I'm not going to show you a
3    million pages of documents and ask you if you've
4    seen anything.  Let's back up, though.  Yesterday,
5    did you review any documents in anticipation of
6    your litigation --
7            MR. JACKSON:  The answer to that is
8    yes or no.
9        Q.  -- of your deposition?
10       A.  Yes.
11       Q.  What documents did you review?
12           MR. JACKSON:  Same instruction,
13   basis already stated.  Work product is what we
14   think is important, and you're not entitled to
15   know what our thought process is, and you're free
16   to show her any document and ask her if she's seen
17   it yesterday, if you can figure out what's
18   important and ask her about it.
19           MR. DOLES:  Well, I've already asked
20   her, and she's already answered that she's seen
21   interrogatories and the complaint.  And the notice
22   of deposition.  So you're saying --
23       Q.  Were there any other documents that
24   you've reviewed in anticipation of your deposition
25   today?

**Hecker v. Deere**
**No. 06-C-0719**
**Exhibit 8 to Plaintiffs**
**Opposition to Bill of Costs**

| Deponent | Party | Date | RPTR | Attendance Fee | ASCII/CD | Exhibit Copies | E-Trans | Archiving | Word Index | Mini | Delivery | Per Page | Total Pages | Total Trans Fee | Real Time | Video | DVD | Video Archive | Video Delivery | Discount | Total Court Reporting | Total Video | Total Taxable Deponent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dennis Hecker | Plaintiff | 3/26/2007 | LegalLink | | | $ 45.00 | | $ 30.00 | | | | $ 0.75 | 225 | $168.75 | | | | | | | | | $243.75 |
| Jonna Duane | Plaintiff | 3/26/2007 | Esquire | | | $ 299.60 | | $ 7.50 | | | | $ 0.75 | 184 | $138.00 | | | | | | | | | $445.10 |
| Janice Riggins | Plaintiff | 3/30/2007 | Esquire | | | | | $ 30.00 | | | | $ 0.75 | 207 | $155.25 | | | | | | | | | $185.25 |
| Pamela Wilks | Deere | 4/12/2007 | Esquire | | | $ 45.00 | | $ 30.00 | | | | $ 0.75 | 277 | $207.75 | | | | | | | | | $282.75 |
| Dennis Schwartz | Deere | 5/4/2007 | Esquire | | | $ 45.00 | | $ 30.00 | | | | $ 0.75 | 233 | $174.75 | | | | | | | | | $249.75 |
| Glenn Huston | Deere | 5/17/2007 | Herring | | | $ 114.50 | | | | | | $ 0.75 | 164 | $123.00 | | | | | | | | | $237.50 |
| Mertroe Hornbuckle | Deere | 6/8/2007 | Herring | | | | | $ 3.50 | | | | $ 0.75 | 97 | $72.75 | | | | | | | | | $76.25 |
| John Leinart | Deere | 6/14/2007 | Herring | | | | | | | | | $ 0.75 | 143 | $107.25 | | | | | | | | | $107.25 |
| Francis Bastien | Fidelity | 5/8/2007 | Esquire | | | $ 17.50 | | $ 20.00 | | | | $ 0.75 | 289 | $216.75 | | | | | | | | | $254.25 |
| Gregory Locke | Fidelity | 5/8/2007 | Esquire | | | $ 17.50 | | $ 20.00 | | | | $ 0.75 | 47 | $35.25 | | | | | | | | | $72.75 |
| Joanne Morlan | Fidelity | 5/9/2007 | Esquire | | | $ 35.00 | | $ 20.00 | | | | $ 0.75 | 310 | $232.50 | | | | | | | | | $287.50 |
| Paul Montecalvo | Fidelity | 5/10/2007 | Esquire | | | $ 35.00 | | $ 20.00 | | | | $ 0.75 | 251 | $188.25 | | | | | | | | | $243.25 |
| David Moore | Fidelity | 5/10/2007 | Esquire | | | $ 35.00 | | $ 20.00 | | | | $ 0.75 | 187 | $140.25 | | | | | | | | | $195.25 |
| Christopher McGeown | Fidelity | 5/22/2007 | Esquire | | | | | $ 20.00 | | | | $ 0.75 | 183 | $137.25 | | | | | | | | | $157.25 |
| Steven Tibbets | Fidelity | 22-May | Esquire | | | | | $ 20.00 | | | | $ 0.75 | 183 | $137.25 | | | | | | | | | $157.25 |
| Brian Hutton | Fidelity | 5/23/2007 | Esquire | | | | | $ 20.00 | | | | $ 0.75 | 149 | $111.75 | | | | | | | | | $131.75 |
| Guy Patton | Fidelity | 24-May | Esquire | | | | | $ 20.00 | | | | $ 0.75 | 190 | $142.50 | | | | | | | | | $162.50 |
| Bridget Gentile | Fidelity | 5/24/2007 | Esquire | | | | | $ 20.00 | | | | $ 0.75 | 77 | $57.75 | | | | | | | | | $77.75 |
| Gautam Vangala | Fidelity | 6/14/2007 | Esquire | | | | | $ 20.00 | | | | $0.75 | 97 | $0.00 | | | | | | | | | $20.00 |
| | | | | | | | | | | | | | | | | | | | | TOTAL COSTS RECOVERABLE: | | | $3,587.10 |



EXHIBIT
8